**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-03129-RM-SKC

CABLE TELEVISION LABORATORIES, INC., a Delaware corporation,

Plaintiff,

v.

BUCKEYE CABLEVISION, INC., an Ohio corporation,

Defendant.

---

**ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM**

---

Defendant Buckeye Cablevision, Inc. ("Buckeye"), by and through undersigned counsel, respectfully submits its Answer to Plaintiff's First Amended Complaint, and its Counterclaim as follows:

**The Parties**

1. Buckeye denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Amended Complaint, and therefore denies the same.

2. Buckeye denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Amended Complaint, and therefore denies the same.

3. Buckeye admits the allegations in paragraph 3 of the Amended Complaint.

4. Buckeye admits that it provides the services described in paragraph 4 of the Amended Complaint but, to the extent Plaintiff alleges that Buckeye's services are limited to those described therein, Buckeye denies the allegations in paragraph 4.

5. Buckeye admits the allegations in paragraph 5 of the Amended Complaint but notes that BCI Mississippi Broadband, LLC is not a party to this Action.

6. Buckeye admits the allegations in paragraph 6 of the Amended Complaint.

7. Buckeye admits the allegations in paragraph 7 of the Amended Complaint but notes that Block Communications, Inc. is not a party to this Action.

8. The allegations in paragraph 8 of the Amended Complaint, particularly with respect to the phrase "common control," contain legal conclusions to which no response is required. To the extent a response is required, Buckeye denies the allegations in paragraph 8 of the Amended Complaint.

**Jurisdiction and Venue**

9. Buckeye admits the allegations in paragraph 9 of the Amended Complaint.

10. Paragraph 10 of the Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Buckeye denies the allegations in paragraph 10 of the Amended Complaint.

11. Paragraph 11 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Buckeye denies the allegations in paragraph 11 of the Amended Complaint, and specifically denies the allegation that Buckeye resides within the District of Colorado.

**The Buckeye Subscription Agreement**

12. Buckeye admits the allegations in paragraph 12 of the Amended Complaint.

13. Paragraph 13 purports to describe a document referred to as a Subscription Agreement. To the extent the allegations in paragraph 13 seek to paraphrase or characterize the

contents of the Subscription Agreement, the document speaks for itself and Buckeye denies the allegations to the extent they are inconsistent with the Subscription Agreement.

14. Buckeye admits that it signed a membership confirmation on or about April 16, 1997. To the extent the allegations in paragraph 14 of the Amended Complaint seek to paraphrase or characterize the contents of the Membership Confirmation, the document speaks for itself and Buckeye denies the allegations to the extent they are inconsistent with the Membership Confirmation.

**Buckeye's Membership Dues Obligation**

15. Paragraph 15 purports to describe the CableLabs' bylaws and amendments thereto. To the extent the allegations in paragraph 15 seek to paraphrase or characterize the contents of the bylaws, the documents speak for itself and Buckeye denies the allegations to the extent they are inconsistent with the documents.

16. Buckeye admits the allegations in paragraph 16 of the Amended Complaint.

17. Buckeye denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Amended Complaint and therefore denies the same.

18. Buckeye admits that CableLabs' Board of Directors received a Membership Dues Clarification memorandum from CableLabs on or around November 18, 2015. Buckeye denies the remaining allegations in paragraph 18 of the Amended Complaint.

19. Buckeye denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Amended Complaint and therefore denies the same.

**Buckeye's Dues Delinquency – MaxxSouth Cable Revenue**

20. Buckeye admits that Block acquired cable television systems serving subscribers in Mississippi and Alabama in both 2014 and 2017. Buckeye denies the remaining allegations in paragraph 20 of the Amended Complaint.

21. Buckeye admits the allegations in the first sentence of paragraph 21 of the Amended Complaint and denies the remaining allegations in paragraph 21.

22. Buckeye denies the allegations in paragraph 22 of the Amended Complaint.

23. Buckeye denies the allegations in paragraph 23 of the Amended Complaint to the extent such allegations purport that Buckeye is obligated to pay member dues based on MaxxSouth's Cable Revenues.

**Buckeye's Dues Delinquency – MaxxSouth and Buckeye Cable Revenue**

24. Buckeye denies the allegations in paragraph 24 of the Amended Complaint.

25. Buckeye denies the allegations in paragraph 25 of the Amended Complaint.

26. Buckeye denies the allegations in paragraph 26 of the Amended Complaint.

27. Buckeye denies the allegations in paragraph 27 of the Amended Complaint.

28. Buckeye denies the allegations in paragraph 28 of the Amended Complaint.

**Buckeye's Notice of Termination**

29. Buckeye admits the allegations in the first sentence of paragraph 29 of the Amended Complaint. Buckeye denies the remaining allegations in paragraph 29.

## FIRST CLAIM FOR RELIEF
## (Breach of Contract)

30. Buckeye repeats and incorporates all admissions and denials set forth above as though fully set forth herein.

31. Buckeye denies the allegations in paragraph 31 of the Amended Complaint.

## PRAYER FOR RELIEF

32. Buckeye denies that any of the requests for relief is appropriate.

## GENERAL DENIAL

33. Buckeye denes every allegation and averment in the Amended Complaint not specifically admitted in this Answer.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief may be granted due to, but not necessarily limited to, the following:

   a. The three years written notice provision (the "Notice Provision") of the Subscription Agreement constitutes and unenforceable penalty; or

   b. In the alternative, the Notice Provision is unenforceable as it constitutes an unreasonable restrictive covenant;

2. To the extent the Subscription Agreement is valid and enforceable; Plaintiff's claim is barred in whole or in part by Plaintiff's breach of that Agreement.

3. Plaintiff's claim is barred in whole or in part by Plaintiff's failure to mitigate.

4. Plaintiff's claim is barred in whole or in part by the doctrines of laches, estoppel, waiver and unclean hands.

5. Buckeye denies each and every allegation in the Complaint not expressly admitted herein.

6. Buckeye reserves the right to amend this Answer to assert additional defenses as new facts come to light and/or as discovery progresses.

**COUNTERCLAIM**

Defendant Buckeye hereby counterclaims against Plaintiff and in support of the same alleges as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a)(1) because Buckeye and CableLabs are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) because a substantial part of the events or omissions giving rise to this action occurred in Colorado.

**THE PARTIES**

3. Defendant/Counterclaim Plaintiff Buckeye is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 2700 Oregon Road, Northwood, Ohio.

4. Upon information and belief Plaintiff/Counterclaim Defendant CableLabs is a non-profit membership corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 858 Coal Creek Circle, Louisville, Colorado.

**GENERAL ALLEGATIONS**

5. On or about June 3, 1992, Buckeye entered into a subscription agreement with CableLabs, a copy of which is attached to the Amended Complaint [ECF # 30] as Exhibit A (the "Subscription Agreement").

6. Pursuant to the Subscription Agreement, Buckeye acknowledged receipt of a copy of the Certificate of Incorporation and the then-current By-Laws of CableLabs (the "By-Laws").

7. The Subscription Agreement is silent as to whether CableLabs is obligated to provide to Buckeye any and all future amendments to the By-Laws.

8. Also pursuant to the Subscription Agreement, Buckeye agreed to comply with and be bound by the terms and conditions contained in the Certificate of Incorporation and By-Laws, as the same shall be amended from time to time. Such terms and conditions include, *inter alia*:

a. Buckeye's agreement to pay such dues as may be specified in Section 4.1 of the By-Laws, as such dues may be adjusted from time to time by the Board of Directors of the Corporation in accordance with the terms of the By-Laws, as the same may be amended from time to time.

9. The CableLabs' By-Laws as of 1992 (the "Original By-Laws") contained the following provisions relating to membership dues:

ARTICLE 4 - DUES

4.1 Amount. Members shall pay dues to the corporation quarterly and in such amounts as the Board of Directors may from time to time determine. The initial level of dues shall be equal to $.02 per subscriber per Member per month, provided that such dues shall not equal less than $100 per month. The Board of Directors may establish such procedures as it may deem appropriate to determine the number of subscribers of each Member. Dues owed with respect to the initial year of membership shall be prorated in such manner as the Board of Directors may deem appropriate for Members whose membership commences other than on the first day of the corporation's fiscal year. The Board of Directors shall not, prior to September 30, 1991, increase the dues (on a per subscriber basis) of any Member who shall have become a Member of the corporation on or before September 30, 1988 and shall have paid dues from July 1, 1988.

ARTICLE 6 – BOARD OF DIRECTORS

6.1 Powers. The property, affairs, business and general administration of the corporation shall be managed by or under the direction of the Board of Directors. The Board of Directors shall possess all of the powers of the governing body of a for-profit membership corporation under the Delaware General Corporation Law. The Board of Directors shall determine policy of the corporation and administer its application within the framework of the By-Laws, shall create committees and dissolve them, shall approve annual budgets and

> special disbursements, may retain an independent auditor to review the books of the corporation annually and shall set the amounts of monthly dues.

10. The Original By-Laws granted the Board of Directors the power to modify the "amount" of Member Dues but was silent on whether the Board of Directors had the authority to change the mechanism by which Dues were to be calculated—i.e. per-subscriber vs. by cable revenue.

11. CableLabs amended its By-Laws on or around July 14, 1998 (the "1998 By-Laws"). The 1998 By-Laws contained an amended Section 4.1, as follows:

> 4.1 Amount. Members shall pay dues to the corporation quarterly and in such amounts as the Board of Directors may from time to time determine. The initial level of dues shall be equal to $.02 per subscriber per Member per month. The Board of Directors may establish such procedures as it may deem appropriate to determine the number of subscribers of each Member.

12. The 1998 By-Laws remained silent as to whether the Board of Directors had the authority to modify anything other than the "amount" of Member Dues on a per-subscriber basis.

13. Upon information and belief, the By-Laws were next amended on or around February 21, 2013 (the "2013 By-Laws"). However, Section 4.1 of the 2013 By-Laws also remained unchanged from same section in the 1998 By-Laws. Likewise, Section 6.1 of the 2013 By-Laws continued to afford the Board of Directors with the authority only to "set the amounts of monthly dues" and not the mechanism by which dues are to be calculated.

14. Upon information and belief, the By-Laws were again amended and restated on or around March 2, 2016 (the "2016 By-Laws"). As before, Section 4.1 and Section 6.1 remained unchanged.

15. Upon information and belief, the By-Laws were last amended and restated on or around March 2, 2017 (the "2017 By-Laws"). The language of Sections 4.1 and 6.1 in the 2017 By-Laws still remained unchanged.

16. Although each version of the By-Laws permits the Board of Directors to adjust the amount of dues for Members, there is no provision contained in any version of the By-Laws regarding adjustments to the formula for calculating dues or the requirement of notice, if any, to Members of such a dues adjustments.

**<u>CableLabs Purportedly Changes its Dues Formula</u>**

17. CableLabs alleges that on December 15, 2004, CableLabs' Board of Directors revised the quarterly dues formula, such that beginning July 1, 2005, membership dues would be determined on the basis of a member's cable revenue from all sources, rather than upon the member's number of subscribers.

18. During the course of discovery in this Action, CableLabs produced the minutes from the Cablelabs' Board of Directors meeting that took place on December 15, 2004. Nowhere within those minutes is there any reference to an action taken by the Board, or even a discussion by the Board as to a change in the membership dues formula.

19. On November 17, 2004, the CableLabs Executive Committee held a meeting during which Chris Lammers, CableLabs' Executive Vice President and Chief Operating Officer, "proposed that as of July 1, 2005, Cable Labs' dues structure would be determined on the basis of cable revenue from all sources, rather than upon the number of basic subscribers."

20. Pursuant to the 1998 By-Laws, which were in effect as of the November 17, 2004 and December 15, 2004 meetings, actions by the Board of Directors or the Executive Committee, including amendments to By-Laws, could only be accomplished in the following two manners:

> 7.6 Action at Meeting. At any meeting of the Board of Directors at which a quorum is present, the vote of a majority of those present shall be sufficient to take any action, unless a different vote is specified by law, the Certificate of Incorporation or these By-Laws; provided, however, that an affirmative vote of two-thirds in number of the Directors shall be required to amend the corporation's Certificate of Incorporation or to amend any provision of these By-laws.
>
> 7.7 Action by Consent. Any action required or permitted to be taken at any meeting of the Board of Directors or any committee of the Board of Directors may be taken without a meeting, if all members of the Board or committee, as the case may be, consent to the action in writing, and the written consents are filed with the minutes of proceedings of the Board or committee.

21. Mr. Lammers' proposal to amend the member dues formula referenced in the November 17, 2004 Executive Committee meeting was neither voted on nor approved through consent by the Board of Directors at the December 15, 2004 meeting.

22. Even if the Board of Directors took action to amend the member dues formula in or around December 2004, such action was never reflected in an amendment to the By-Laws.

23. Further, the Board of Directors did not effectively communicate any such dues amendment to its Members in December 2004 or thereafter.

24. In fact, during a meeting of the CableLabs Board of Directors on November 18, 2015, over ten years after the purported dues formula change, CableLabs' general counsel requested clarification of how member dues are to be calculated. During that meeting, the Board of Directors reviewed the existing Bylaws and prior Board resolutions to clarify their intent. Upon motion duly made and seconded, the clarification consistent with current and past

practices was unanimously approved that member dues are to be based on Cable Revenue received by each member company and its affiliates.

25. Upon information and belief, the November 18, 2015 meeting marked the first time in which the dues formula change was voted on and approved in accordance with the procedures set forth in the By-Laws. However, the By-Laws were never amended to reflect this change.

26. Nonetheless, at some point between July 2005 and November 18, 2015, CableLabs began sending invoices to Buckeye for payment of quarterly member dues based not on number of subscribers, as set forth in the By-Laws, but on cable revenue.

27. Since as early as July 2005, Buckeye has made dues payments to CableLabs based on a formula not approved by the Board of Directors until November 2015, and contrary to the express terms set forth in the By-Laws. CableLabs is therefore liable for any membership dues improperly paid by Buckeye from July 2005 to November 2015, the period during which the member dues formula had not been properly amended under the By-Laws.

**Block Communications, Inc. Acquires a Mississippi-Based Cable Provider**

28. Block Communications, Inc. ("BCI") is a privately held diversified media holding company headquartered in Toledo, Ohio.

29. At all relevant times, Buckeye has been wholly owned by BCI.

30. In or around November 2014, BCI established a cable presence in Mississippi and a small portion of Alabama through its acquisition of certain assets previously owned by MetroCast Communications of Mississippi, LLC ("MetroCast"), which acquisition was

accomplished through BCI's wholly owned subsidiary, BCI Mississippi Broadband, LLC, d/b/a MaxxSouth Broadband ("MaxxSouth").

31. As of November 2014, CableLabs had not yet properly approved the purported modification of its member dues formula from a per-subscriber formula to a cable revenue formula. CableLabs had also not yet issued its November 2015 dues clarification memo, which purported to clarify that "Cable Revenue" included cable revenue not just of the CableLabs members, but of its members' affiliates.

32. Although the November 2015 clarification memo was shared with CableLabs' Board of Directors, it is unclear when, if ever, it was communicated to CableLabs' members, including Buckeye.

33. Upon information and belief, at no point prior to this litigation did CableLabs notify Buckeye that CableLabs' dues should be based in part on revenue from a separate corporate entity.

34. From November 2014 through the first quarter of 2018, Buckeye has paid member dues to CableLabs without accounting for revenue of MaxxSouth.

35. CableLabs has known of the MaxxSouth transaction since 2014 and yet CableLabs never objected to or challenged Buckeye's dues payments until it filed the Amended Complaint.

**<u>CableLabs Fails to Adequately Notify Members of Board Actions and Amendments to By-Laws</u>**

36. The Subscription Agreement requires Buckeye to comply with and be bound by the terms and conditions of the By-Laws. However, CableLabs has made numerous amendments to its By-Laws since 1992 without providing such amendments to Buckeye.

37. CableLabs operates a website—www.cablelabs.com—that includes a password-protected member dashboard. The current version of the By-Laws cannot be reviewed or downloaded by members, even after entry to the member dashboard. Nor are the minutes of the CableLabs Board of Director meetings made available to members through this member dashboard. Thus, when the Board of Directors makes decisions that affect members, including amendments to the By-Laws, Buckeye is not immediately made privy to such decisions.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

38. Buckeye repeats and incorporates by reference the allegations set forth in paragraphs 1 through 37 above.

39. Other than the penalty for early termination, which is unenforceable, Buckeye and CableLabs are parties to a valid and enforceable Subscription Agreement.

40. Under the Subscription Agreement, CableLabs admitted Buckeye as a Member on the terms and conditions set forth therein and in the Certificate of Incorporation and By-laws, as the same shall be amended from time to time.

41. CableLabs breached the Subscription Agreement by binding Buckeye to a purportedly modified Section 4.1 of the By-Laws without first complying with the procedures set forth in Sections 7.6 and 7.7 therein.

42. As a result of CableLabs' breach of the Subscription Agreement, Buckeye has been damaged in an amount to proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

43. Buckeye repeats and incorporates by reference the allegations set forth in paragraphs 1 through 42 above.

44. Under Delaware Law, the duty of good faith and fair dealing is required in the performance of all contracts. Thus CableLabs owed Buckeye a duty of good faith and fair dealing in its performance of the Subscription Agreement.

45. Buckeye entered into the Subscription Agreement with the understanding that it would pay member dues based on a formula provided for in the By-Laws—namely based on the number of Buckeye's subscribers.

46. Buckeye entered into the Subscription Agreement well before BCI acquired a presence in Mississippi and Alabama in 2014 through the MaxxSouth transactions.

47. At the time it entered into the Subscription Agreement, Buckeye did not (and could not) contemplate having to pay member dues based on its cable revenue and definitely did not contemplate paying member dues based on the cable revenue of other (at that point potential) affiliate entities.

48. The Subscription Agreement and the By-Laws referenced therein are silent as to whether the CableLabs Board of Directors may change the *formula* for calculating dues and not just the amount per subscriber.

49. Based on the language of the Original By-Laws and each amendment thereto, all of which refer only to the "amount" of dues, and the procedures to determine number of *subscribers* of each Member, it was unreasonable for the CableLabs Board of Directors to change the formula for calculating dues.

50. Buckeye further entered into the Subscription Agreement with the understanding that it would be kept abreast of any and all amendments to the By-Laws and Board of Directors actions that directly affect members.

51. The Subscription Agreement and the By-Laws referenced therein are silent as to CableLabs' requirements for providing notice to members of pertinent amendments.

52. CableLabs breached the duty of good faith and fair dealing by (i) modifying the formula for calculating dues without proper Board Approval, in a manner inconsistent with the language of the By-Laws, and without a corresponding amendment to the By-Laws; and (ii) neglecting to notify Buckeye of any and all amendments to the By-Laws and any and all Board of Directors actions that directly affect members.

53. CableLabs' breach of the duty of good faith and fair dealing has caused damages to Buckeye in an amount to be proven at trial.

WHEREFORE, Defendant Buckeye Cablevision, Inc. respectfully prays that the Plaintiff's Amended Complaint be dismissed with prejudice and respectfully requests the Court to enter judgment as follows:

1. In favor of Buckeye and against CableLabs on the first Counterclaim for Relief in an amount to be proven at trial, plus interest, costs, and attorneys' fees;

2. In favor of Buckeye and against CableLabs on the second Counterclaim for Relief in an amount to be determined at trial, plus interest, costs, and attorneys' fees;

3. For such other and further relief as this Court deems just and proper.

Buckeye demands a jury trial on all issues so triable.

Respectfully Submitted this 26th Day of April, 2019.

**TIMMINS LLC**

*/s/ Alan Schindler*
Alan Schindler
Edward P. Timmins
450 East 17th Ave., Suite 210
Denver, CO 80203
Telephone: 303-592-4500
Email: as@timminslaw.com
et@timminslaw.com

*Attorneys for Defendant, Buckeye Cablevision, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 26th 2019, I served a copy of the foregoing via CM/ECF on all parties who have entered an appearance herein.

*/s/ Alan Schindler*